# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RQ CONSTRUCTION, INC., a California corporation; RQ MANUFACTURING, LLC, a California limited liability company; ECOWALL MANUFACTURING, LLC, a Nevada limited liability company; and GEORGE H. ROGERS, III, an individual,<br><br>　　　　　　　　　　Plaintiffs,<br>　vs.<br><br>EXECUTIVE RISK INDEMNITY, INC., a Delaware corporation; and DOES 1 through 20,<br><br>　　　　　　　　　　Defendants. | CASE NO. 13-CV-1360-LAB-KSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT** |

　　　This is an insurance coverage dispute. Plaintiffs allege that Executive Risk Indemnity ("ERI") improperly withdrew its defense in an underlying civil case and then improperly refused to contribute to the settlement of that case. Now before the Court is ERI's motion to dismiss.

**I.　Factual Background**

　　　The factual allegations in Plaintiffs' ("RQC") complaint are somewhat thin, but are supplemented considerably in the parties' respective briefs. The Court will do its best here

//

to summarize only those facts that are either uncontested or come from supplemental documents that it may consider for the purposes of a motion to dismiss.

### A. The Policy

On March 18, 2011, RQ Construction applied for Directors and Officers Liability Coverage with ERI. (Mot. to Dismiss, Ex. C.) ERI then issued a policy, with a period of January 25, 2011 through January 25, 2012 and a coverage limit of $3,000,000 per claim. (Compl. ¶¶ 8–9; Policy, Declarations, Items 2, 4.) The policy covered RQ Construction, certainly, but RQC argues that it also covered RQC's subsidiary RQ Manufacturing ("RQM"), RQM's subsidiary EcoWall, and RQC's CEO George Rogers. That seems to be right. (Policy, General Terms and Conditions, Sections II(H)-(I).) The policy had a $25,000 deductible, and covered only claims first made during the policy period. (Policy, Declarations, Item 8.)

### B. The SFIP Lawsuit

Several years prior to the policy being issued, in December 2007, EcoWall signed a lease for commercial property in Moreno Valley, California owned by Moreno SFIP Buildings, LLC ("SFIP"). (Compl. ¶ 10.) There were no other signatories to the lease. (Lease at 1, 18.) At some point EcoWall stopped making payments, and in October 2010 SFIP filed an unlawful detainer action, naming it *and* RQC as defendants. The action sought possession of the property and past-due rent of $153,274.32—and nothing more.

EcoWall vacated the property that month, and soon after the unlawful detainer action became a straightforward civil case in which SFIP was only seeking past-due rent. (Compl. ¶ 12.) RQC alleges in its complaint that it didn't tender the unlawful detainer action to ERI because it wasn't covered under its policy, which is a little confusing considering that RQC didn't even have a policy with ERI at the time. (Compl. ¶ 11.) RQC clears this up in its opposition brief, explaining that in October 2010, when the unlawful detainer action was filed, RQC had two policies with Travelers—a commercial general liability policy and a directors and officers policy—neither of which covered SFIP's action insofar as it sought only
/ /

- 2 -

possession of the property and past-due rent. It's for this reason that RQC didn't tender the action to Travelers initially. (Opp'n Br. at 5.)

In any event, the following year, in September 2011, SFIP filed a first amended complaint. This added claims for waste, conversion, fraudulent transfer, constructive fraudulent transfer, fraud, and negligent misrepresentation, and it added RQM and George Rogers as defendants. (Compl. ¶ 14, 19.) The filing of the first amended complaint didn't come as a surprise; SFIP informed counsel for EcoWall and RQC in May 2011 that it intended to file an amended complaint, in July 2011 it filed a motion to amend its complaint, and in August 2011 the parties stipulated to the amended complaint being filed.[1] (Compl. ¶¶ 13–15, 18–19.)

As RQC tells it, the new claims in SFIP's first amended complaint were unrelated to EcoWall's breach of the lease agreement, and SFIP sought damages that were wholly separate from past-due rent. For example, in its motion to amend its complaint SFIP explained:

> The UD Complaint was a simple unlawful detainer case, using a form complaint. It sought possession of the Property, recovery of unpaid rent, forfeiture of the Lease, and attorneys' fees. It named two parties: EcoWall and RQC.
>
> After the filing of the UD Complaint, and as a result of investigation and due diligence, Plaintiff has learned of additional unlawful conduct and damages caused by EcoWall, RQC, and other related entities. As a result, the FAC adds not only additional parties, but also additional claims. Specifically, the FAC seeks damages for breach of contract, waste, conversion, fraudulent transfer, constructive fraudulent transfer, fraud, and negligent misrepresentation . . . . (Opp'n Br., Ex. 2.)

ERI, for its part, points out that when RQC moved to dismiss SFIP's complaint, it said "The instant action arises out of a lease entered into, on December 7, 2007, between SFIP and EcoWall . . . ." (Opp'n Br., Ex. B.)

---

[1] While the *filing* of the complaint didn't come as a surprise, RQC claims that it wasn't until July 2011 that it learned SFIP intended to fortify its unlawful detainer action with the other claims and add as defendants RQM and Rogers. (Blum Decl. ¶ 5.) While the Court has no problem considering the many policy and legal documents submitted by the parties with respect to this motion, either because they are incorporated by reference in the complaint or subject to judicial notice, the Blum declaration contains factual allegations that should really be in RQC's complaint.

### C. RQC's Tender of SFIP Lawsuit and ERI's Initial Defense

On August 5, 2011, before SFIP filed its first amended complaint, RQC tendered the unlawful detainer action to ERI and requested indemnification. (Compl. ¶ 16.) RQC alleges that its tender included a copy of the unlawful detainer action, which showed the date it was filed, along with an explanation that SFIP intended to file a first amended complaint. (Compl. ¶ 16.) Just over one month later, on September 16, RQC provided ERI with that first amended complaint. (Compl. ¶ 20.)

ERI accepted RQC's tender in a letter dated October 3, 2011, and began paying its defense costs. This is what that October 3 letter said, in relevant part:

> The FAC appears to qualify as a D&O Claim first made against Rogers and Stevens during the Policy Period for a Wrongful Act as is necessary to trigger coverage under insuring Clause I(B), Individual Indemnified Liability Coverage, of the D&O Coverage Section of the Policy. The FAC also appears to qualify as a Insured Organization Claim first made against RQC, RQM and EcoWall during the Policy Period for a Wrongful Act as is necessary to trigger coverage under the Insuring Clause I(C), Corporate Liability Coverage, of the D&O Coverage Section of the Policy. Accordingly, Executive Risk reiterates its acceptance of coverage as to Rogers, Stevens, RQC, RQM, and EcoWall, subject to the following reservation of rights and the applicable $25,000 Deductible Amount. (Mot. to Dismiss, Ex. D.)

The letter, as RQC alleges in its complaint, made it very clear that ERI understood the original complaint SFIP filed against EcoWall and RQC was an unlawful detainer action in October 2010. (Mot. to Dismiss, Ex. D.) It said:

> Executive Risk first received notice of this matter on August 13, 2011 from Arthur J. Gallagher. The notice included a copy of a Notice of Motion and motion for Leave to File a First Amended Complaint, and a copy of the original Complaint filed on October 22, 2010. The original Complaint was an unlawful detainer action filed against RQC and EcoWall. (Mot. to Dismiss, Ex. D.)

ERI also concluded that EcoWall and RQC weren't entitled to indemnification for the underlying unlawful detainer action, nor were SFIP's updated claims for waste and conversion with respect to property covered under the policy:

> Plaintiffs allege that EcoWall breached the Lease. Pursuant to Exclusion III(C)(2) there is no coverage for Loss that represents any amounts owned [sic] under the Lease agreement.

- 4 -

> Next, as Plaintiffs set forth causes of action for waste and conversion alleging property damage and conversion of their property, we refer you to Exclusion III(A)(4), which provides in pertinent part that no coverage will be available for any Claim against an Insured for damage to or destruction of any tangible property including loss of use thereof whether or not it is damages [sic] or destroyed. (Mot. to Dismiss, Ex. D.)

Finally, ERI acknowledged that RQC had also tendered SFIP's lawsuit to Travelers, and it asked for more information on any coverage by Travelers[2]:

> Section VII, Other Insurance of the D&O Coverage Section, generally states, in pertinent part, that if Loss covered by this Policy is also covered under any other valid and collectible insurance policy(ies), then Federal shall cover such Loss only to the extent that the amount of such Loss is in excess of the amount of such other insurance. We understand that you have tendered this matter to RQC's general liability policy, Travelers. We request a copy of the coverage position received by Travelers. (Mot. to Dismiss, Ex. D.)

ERI paid RQC's defense costs for almost five months. (Compl. ¶¶ 21–22.)

### D.     ERI's Withdrawal of its Defense

On February 24, 2012, ERI withdrew its defense of the SFIP Action, claiming that the underlying unlawful detainer action was related to the claims in SFIP's first amended complaint, and that it was filed prior to—that is, outside of—the policy period. (Compl. ¶ 16.) There's little doubt that this represented a change in ERI's view of its coverage obligations. Reading the February 24 letter, it appears that in January 2012 SFIP filed a second amended complaint, which RQC provided to ERI (and a new claims examiner) and which caused ERI to revisit RQC's policy and reconsider its obligation under that policy. (Mot. to Dismiss, Ex. G.[3])

> In its amended complaint, SFIP asserts causes of action for breach of contract, waste, conversion, fraudulent transfer, constructive fraudulent transfer, fraud, and negligent misrepresentation. Each of these causes of action are related

---

[2] The role of Travelers in this case deserves more attention in RQC's complaint than it gets, even if the Court can ultimately consider the Travelers policy here because its authenticity isn't in question and it's RQC's complaint references it. (Compl. ¶ 26.)

[3] In its motion to dismiss ERI appears to quote from this February 24 letter, but the Court can't locate the quoted language in the letter. (Mot. to Dismiss at 7.) RQC's complaint alleges that there was a follow-up letter that ERI sent on March 6, and it may be that ERI is quoting from it. (Compl. ¶ 23.)

> to the defendants' alleged failure to comply with the terms of the lease agreement, misrepresentations made in connection with that lease agreement and other alleged wrongful acts in violation of the lease agreement . . . .
>
> Furthermore, because each of those Claims is based upon, arising from or in consequence of the same or related facts, circumstances, situations, transactions and events (the least agreement and the defendants' occupation of the premises which are the subject of the lease agreement, they constitute Related Claims which are deemed to have been made when the earliest of these Claims was first made. Accordingly, these Related claims are deemed to have been made on a date between October 22, 2010 and November 3 2010, when the original complaint for unlawful detainer was served. Because these matters are Related Claims that were first made on a date between October 22, 2010 and November 3, 2010, these Claims were first made prior to the inception of the Policy and, therefore, these Claims were first made prior to the inception of the Policy and, therefore, these Claims do not constitute a Claim first made during the Policy Period. (Mot. to Dismiss, Ex. G.)

RQC alleges that ERI paid no defense costs after February 24, 2012, and that as a result it paid those fees out of its own pocket. (Compl. ¶ 24.) The case settled in October 2012 for $400,000, $80,000 of which RQC, RQM and EcoWall were responsible for, for reasons the Court will now turn to. (Compl. ¶ 25.)

### E. The Role of Travelers

As the Court noted above, Travelers' role in defending RQC receives only peripheral mention in RQC's complaint, even though, judging by the parties' respective briefs, it's highly relevant to RQC's claims. All that RQC alleges is that $320,000 of the $400,000 settlement was covered by its "Commercial General Liability carrier." (Compl. ¶ 25.)

There is no dispute that RQC tendered SFIP's lawsuit to Travelers, under a general liability policy with a $1 million coverage limit. As the Court reads the record, Travelers claims it was first notified of the lawsuit in August 2011, which suggests that RQC tendered the forthcoming first amended complaint to Travelers rather than the original unlawful detainer action—although this may not be that important of a point. (Mot. to Dismiss, Ex. E.) Like ERI before it, Travelers accepted RQC's tender in a letter outlining its coverage obligations, sent on October 27, 2011. (Mot. to Dismiss, Ex. E.) It agreed to defend RQC,

RQM, and Rogers, but not EcoWall, its explanation being that its policy precluded coverage for property damage to rented property and EcoWall was renting the allegedly damaged property from SFIP. (Mot. to Dismiss, Ex. E.)

RQC claims in its opposition brief that SFIP's waste claim was covered, but not SFIP's claims for fraud, negligent misrepresentation, conversion, or fraudulent transfer. This seems to be right, considering that Travelers' letter indicated it had "no obligation to indemnify your clients to the extent the plaintiff seeks damages for intentional conduct." (Mot. to Dismiss, Ex. E. ) What makes less sense is RQC's claim in its opposition brief that "Travelers informed RQC that it was only required to indemnify RQC for property damage and not the other alleged claims or damages"—a claim that is supported by a declaration of RQC's lawyer rather than a citation to the documentary evidence. (Opp'n Br. at 8.) Unless some kinds of property damage were covered by Travelers' policy and some were not, the Court isn't sure how to reconcile the claim that Travelers declined to cover EcoWall, presumably because it was allegedly responsible for property damage, and the claim that Travelers acknowledged it was obligated to indemnify RQC for property damage.

Because Travelers agreed to defend RQC subject to a reservation of rights, it limited the attorney's fees it was willing to pay, pursuant to California Civil Code § 2860: $165 per hour for partners, and $150 per hour for associates. (Mot. to Dismiss, Ex. E.) RQC claims in its opposition brief that these amounts were inadequate for it to retain its counsel of choice, but it also claims that after ERI accepted its tender, and after Travelers did the same, "Executive and Travelers each paid one half of the full rate of RQC's counsel." (Opp'n Br. at 88–9.) Presumably, then, Travelers' unwillingness to pay the full cost of RQC's counsel of choice wasn't a problem when ERI was splitting the bill, but it became a problem in February 2012 when ERI withdrew its defense. Indeed, RQC explains in its opposition brief that it made up the difference and "paid these costs for the defenses of each of the Insureds, including the individuals, Rogers and Stevens." (Opp'n Br. at 10.) Moreover, because it had such limited coverage from Travelers after ERI withdrew, and because it was
/ /

1 forced to cover some of the costs of its defense, "RQC agreed to put its own money into a
2 settlement agreement together with a payment to Travelers." (Opp'n Br. at 10.)

3 As ERI points out, this factual background is directly at odds with RQC's allegation
4 in its complaint that when ERI withdrew its defense, "Plaintiffs were forced to pay their
5 attorneys' fees and hire the law firm of Marks, Finch, Thornton & Baird, LLP to defend them,
6 thereby incurring costs and attorneys' fees in the defense of the Complaint. These fees and
7 costs were not paid for by Executive . . . *or any other source*." (Compl. ¶ 31.) By RQC's own
8 words—implicit in its complaint and explicit in its opposition brief—some defense costs in
9 fact were paid by Travelers. This presumably means that RQC is claiming damages equal
10 to, roughly, the difference between the statutory hourly rates paid by Travelers and its
11 chosen counsel's actual rates—a difference that was previously covered by ERI. Indeed,
12 when ERI withdrew its defense it noted, "[I]t is our understanding that Travelers
13 acknowledged a potential for coverage for this matter under a general liability insurance
14 policy and agreed to split the Defense Costs with Executive Risk. We have further been
15 advised by Ms. Evans that Travelers will continue to provide a defense to the Insured after
16 Executive Risk's withdrawal of coverage." (Mot. to Dismiss, Ex. G.) And RQC concedes all
17 of this in its opposition brief: "Executive promptly picked up coverage and, for a time, paid
18 the difference between the partial defense costs paid by the CGL carrier and the full rate of
19 the insureds' choice of counsel." (Opp'n Br. at 1.)

20 **II. Claims**

21 RQC asserts four claims against ERI, all of which stem from basically the same thing:
22 ERI's withdrawal of its defense and its accompanying refusal to contribute to RQC's defense
23 costs ($130,000) and that portion of its settlement with SFIP not covered by Travelers
24 ($80,000 of $400,000).

25 The first claim is a breach of contract claim, alleging that ERI's withdrawal of its
26 defense violated the policy it issued to RQC. The basic theory here is that SFIP's first
27 amended complaint asserted claims that were *not* related to its earlier unlawful detainer
28 action, and that were therefore covered under the ERI policy. The second and third claims

are claims for a declaration that ERI has a duty to indemnify RQC, the second claim pertaining to defense costs and the third claim pertaining to damages RQC paid. The fourth claim, for breach of the implied covenant of good faith and fair dealing, accuses ERI of not only violating the terms of its policy but doing so "fraudulently, maliciously, [and] oppressively." (Compl. ¶ 47.) In essence, RQC is alleging here that ERI's withdrawal of its defense was completely unreasonable.

### III. Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court must accept all factual allegations as true and construe them in the light most favorable to RQC. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat ERI's motion to dismiss, RQC's factual allegations needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in RQC's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

## IV. Discussion

ERI argues that RQC's claims should be dismissed for a number of reasons. The Court will try to address its arguments in sequence.

### A. Travelers defended RQC, after all.

There is no dispute that Travelers defended RQC against SFIP's lawsuit—nor can there be much of a dispute that RQC's complaint is cagey on Travelers' role in its defense. ERI's first argument, then, is that Travelers' defense of RQC forecloses it from seeking defense costs from ERI. As ERI puts it in its motion, with emphasis, "RQ was entitled to only one defense, which Travelers provided." (Mot. to Dismiss at 12.)

The problem with this argument is that it assumes the defense Travelers provided was a *full* defense, and RQC denies that it was. It takes the position in its opposition brief, in fact, that its commercial general liability policy with Travelers covered SFIP's claim for waste only, leaving the several other claims to be covered by ERI.[4] (Opp'n Br. at 1, 8 ("The waste cause of action was insured under RQC's CGL policy with Travelers. A CGL policy covers accidental injury or damage to persons or property. It does not cover actions like fraud, negligent misrepresentation, conversion, or fraudulent transfer.")) Even the cases ERI cites confirm that Travelers' defense must have been "full" in order to absolve ERI of any responsibility for its refusal to assist with that defense. *See, e.g.*, *Safeco Ins. Co. of America v. Parks*, 170 Cal. App. 4th 992, 1004 (Cal. Ct. App. 2009) ("An insured is only entitled to one *full* defense.") (emphasis added); *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1093 (Cal. Ct. App. 2005) ("Nonetheless, where one insurer *fully protects* the insured by providing a defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing.") (emphasis added).

That of course begs the question what a "full" defense is, and whether the defense that Travelers provided to RQC qualified as one. The same cases are instructive. In

---

[4] There is no doubt that RQC's complaint should stake out this position, rather than its opposition brief to a motion to dismiss, but that's an argument for a more definite statement. It isn't an argument for dismissing the claim outright.

- 10 -

1 *Safeco*, the court recognized that the general rule doesn't apply "where the insurer that
2 accepts the defense has a policy limit far below the amount claimed, and far lower than that
3 of the insurer that declines the defense." *Safeco*, 170 Cal. App. 4th at 1005 (citing *Wint v.*
4 *Fidelity & Casualty Co.*, 9 Cal.3d 257, 263 (1973)). *Emerald Bay* also recognized *Wint*,
5 quoting its holding that "[A] defense by an insurer whose policy has a limit far below the
6 amount claimed cannot be equated to the defense of an insurer who stands to lose 10 times
7 as much as the insurer who defends . . . ." *Emerald Bay*, 130 Cal. App. 4th at 1094 (quoting
8 *Wint*, 9 Cal.3d at 263). *See also Ringler*, 80 Cal. App. 4th 1165, 1187 (Cal. Ct. App. 2000)
9 ("Ringler suffered no liability in excess of the Policy limits; nor was it compelled or unable to
10 defend itself. Instead, as Ringler implicitly acknowledges, it was fully protected from having
11 to pay *any* costs of its own defense by other insurers who were on the risk . . . .").

12 While RQC's complaint could do a far better job of alleging the facts, as the Court
13 understands them Travelers' policy had a coverage limit of $1,000,000, ERI's policy had a
14 coverage limit of $3,000,000, and SFIP's underlying lawsuit sought $8,000,000 in damages.[5]
15 (Opp'n Br. at 8; Compl. ¶ 9; and Opp'n Br. at 8. *See also* Opp'n Br. at 32.) Moreover, RQC
16 claims that to the extent Travelers claimed its policy only covered property damage and not
17 most of SFIP's claims, it covered just $35,000 of SFIP's alleged damages. (Opp'n Br. at 8,
18 32; Blum Decl. ¶ 9.) It's true that, in the end, Travelers paid out $320,000 of a $400,000
19 settlement, which fell within its own coverage limit, but that still left RQC to pay damages and
20 attorney's fees out of its own pocket that it believes should have been covered by ERI. That
21 being RQC's theory, at least, the Court finds that it has pleaded damages attributable to ERI,
22 and that Travelers' coverage isn't fatal to RQC's claims in the way ERI tries to argue that it
23 is.

24 There is one more point that's important to make here. Even if ERI has the better
25 argument, and Travelers' coverage does present a problem for RQC's claims, that argument
26 is premature at the motion to dismiss phase. In *Safeco*, for example, there was actually a

---

28 [5] The Court doesn't see, in SFIP's first or second amended complaint, a demand for $8,000,000, although it trusts RQC's representation in its opposition brief that SFIP did demand that amount. (Opp'n Br., Exs. 3, 4.)

- 11 -

trial on the question whether one an insured was damaged by the insurer's failure to defend. *Safeco*, 170 Cal. App. 4th at 1004. In *Emerald Bay*, if the Court is reading the opinion properly, there was also a trial on the question—or at least a summary judgment motion. *Emerald Bay*, 130 Cal. App. 4th at 1082. Finally, *Ringer* was the appeal of a summary judgment decision. *Ringler Assocs.*, 80 Cal. App. 4th at 1170. The Court does agree with ERI that "RQ has not (adequately) pleaded that it has suffered any damage because of any act or omission of Executive Risk." (Mot. to Dismiss at 13.) RQC's complaint is skinny, no doubt. A full statement of the facts here shouldn't omit Travelers' coverage, and should be very precise as to what Travelers covered, what it did not, and why RQC was damaged by ERI's withdrawal of a defense that presumably would have made up the difference. All of that comes out in RQC's opposition brief, and the Court finds it only fair that it be front and center in the complaint itself.[6]

### B. RQC is only entitled to § 2860 rates, which Travelers paid.

ERI's next argument is that, as a matter of law, RQC is only entitled to the attorney's fees that Travelers paid under § 2860. Here, ERI relies on *San Gabriel Valley Water Co. v. Hartford Accident & Indem. Co.*, 82 Cal. App. 4th 1230 (Cal. Ct. App. 2000), which held that in cases where an insured has multiple insurers, the cap set by § 2860 applies to all of those insurers collectively. In other words, § 2860 "provides a single rate limitation, for a single counsel and defense, albeit multiple insurers may be required to contribute to its payment." *Id.* at 1241.

As the Court reads *San Gabriel*, though, the policies at issue essentially overlapped. San Gabriel Valley Water Co. had multiple liability policies that, it believed, offered coverage for a lawsuit in which it was accused of furnishing contaminated drinking water. *Id.* at 1233. This case is somewhat different. It's RQC's position that its policies with ERI and Travelers operated independently of one another. ERI issued RQC a directors and officers liability

---

[6] RQC can't find the Court's view of its complaint all that surprising, considering that in its opposition brief it says "The facts in this section are provided for background and context. They may be added to the complaint if the Court believes they are required to state a claim."

- 12 -

policy whereas Travelers issued RQC a commercial general liability policy—and those policies covered distinct claims asserted by SFIP. That being RQC's position, the Court rejects ERI's argument at this motion to dismiss phase that RQC was entitled only to that counsel it could afford at the rates mandated pursuant to § 2860.

Jumping a bit ahead in ERI's motion to dismiss, the Court also rejects here the argument that RQC's real dispute is with Travelers for paying inadequate hourly rates for counsel, and that it had an obligation to arbitrate that dispute under § 2860(c). *See Karsant Family Ltd. P'ship v. Allstate Ins. Co.*, 2009 WL 188036 at *4 (N.D. Cal. Jan. 27, 2009) ("In addition to requiring that the insurer cover the reasonable costs of independent counsel, § 2860 requires that disputes regarding those costs be resolved by arbitration."). Again, it's RQC's position, as the Court understands it, that its policies with Travelers and ERI didn't overlap; they were different policies that covered different claims asserted by SFIP. As it puts the position in its opposition brief, "In addition, Travelers also reserved its rights with regard to the fraud, misrepresentation, conversion, and fraudulent transfer claims; specifically . . . . RQC determined that Travelers' indemnity obligation was potentially limited to only $35,000 of property damage." (Opp'n Br. at 32–33.)[7] That being RQC's position, § 2860 isn't necessarily implicated because RQC actually had no dispute with Travelers. Likewise, the Court rejects at this stage ERI's argument that the real claim here belongs to Travelers', for contribution, and not to RQC. (Mot. to Dismiss at 15–16.)

**C.    The Policy's "Other Insurance" Clause Absolves ERI.**

The policy ERI issued to RQC had an "Other Insurance" clause. It provided:

> If any Loss under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such Loss, subject to its limitations, conditions, provisions and other terms, only to the

---

[7] Elsewhere in its brief, RQC is even more firm that Travelers' coverage was limited to property damage. For example, in its statement of facts it puts the point this way: "The waste cause of action was insured under RQC's CGL policy with Travelers. A CGL policy covers accidental injury or damage to persons or property. It does not cover actions like fraud, negligent misrepresentation, conversion, or fraudulent transfer." (Opp'n Br. at 8.) Taking that statement at its word, RQC didn't even ask Travelers to defend the entirety of SFIP's lawsuit, but only those claims that in RQC's judgment were covered by its commercial general liability policy.

- 13 -

>extent that the amount of such Loss is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.  (Policy, Directors and Officers Liability Coverage Section, Section VII.)

ERI now takes the position that because RQC received a full and complete defense from Travelers, the "Other Insurance" clause in its policy kicks in and absolves it of any responsibility for defending RQC. It supplements this position with the fact that RQC's policy with Travelers was a primary policy.[8] The problem with this position, as with ERI's above positions, is that it assumes away the core allegation in RQC's complaint, namely that Travelers and ERI issued it different policies that covered different kinds of claims, and that the defense and reimbursement it received from Travelers was on some level incomplete or partial.  It's RQC's allegation, as the Court understands it, that Travelers' coverage essentially maxed out shy of its overall liability to SFIP, leaving it with $80,000 of exposure that ERI, as an excess insurer, should have covered.

In ERI's reply brief, it makes the fair point that RQC's *complaint* actually doesn't make the allegation the Court just describes, and instead simply pins total responsibility for its defense and reimbursement on ERI: "But the very gravamen of RQ's Complaint is that Executive Risk was on the risk (as was Travelers), and should have responded." The Court certainly agrees, as it has already said, that more needs to be said of Travelers' role in this case to give substance and precision to RQC's claims, but that is an argument for an amended complaint or more definite statement more than it's an argument for dismissing a claim.  Moreover, the complaint isn't entirely silent with respect to Travelers' role in relation to ERI's.  The final factual allegation is that of the $400,000 settlement amount, "RQC's Commercial General Liability carrier paid $320,000 and RQC, RQM, and EcoWall are obligated to pay $80,000." (Compl. ¶ 25.)

/ /

---

[8] The Travelers policy is attached as Exhibit F to ERI's motion to dismiss, but ERI doesn't give a page number for the relevant "primary" language which is why the Court can't quote it here.  This is not hugely important, though; RQC doesn't seem to contest this fact.

- 14 -

### D. SFIP's Claims Against RQC Weren't Covered Anyway

ERI's next substantive argument is actually logically prior to the arguments addressed above. That argument is that irrespective of the defense and coverage that Travelers provided, SFIP's claims against RQC were related to its original claims against EcoWall and RQC which preceded ERI's policy period.

A brief review of the facts here will help. The policy ERI issued to RQC had a period of January 25, 2011 through January 25, 2012. SFIP's original lawsuit was filed before this policy period, in October 2010, but its first amended complaint was filed during the policy period, in September 2011. ERI's policy is clear that "[a]ll Related Claims will be treated as a single Claim made when the earliest of such Related Claims was first made." (Policy, General Terms and Conditions Section, Section VII(4).) The policy defines related claims as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." (Policy, General Terms and Conditions Section, Section II(R).) So, the question is whether the additional claims added in SFIP's first amended complaint were sufficiently related to the claims in its original unlawful detainer action such that they were effectively asserted before ERI's policy period. Both parties try to hold the other to previous positions each took. ERI, for its part, is eager to point out that when RQC moved to dismiss SFIP's complaint it said its claims arose out of the lease agreement EcoWall signed in 2007. RQC, on the other hand, is equally as eager to point out that ERI originally tendered a defense of SFIP's lawsuit, well aware of its origins as a simple unlawful detainer action.

ERI's position is well-taken. The claims that RQC tendered to ERI were added to a complaint that was filed before its policy period, and there's some reason to think that in virtue of that fact alone the new claims were related to the original claims such that ERI's policy doesn't cover them. At the same time, the original complaint was a simple unlawful detainer action that sought only the possession of the commercial property at issue and past-due rent, and the Court can't see clearly any factual allegations that would be the basis

of the other tort claims—for waste, conversion, and so forth—that were added later. In fact, the doesn't see *any* factual allegations in the unlawful detainer action, really. It consists of some form documents from Riverside Superior Court, a single page setting forth the rent and taxes paid, and then a number of exhibits such as the lease itself and a notice to pay rent or vacate the property. (Opp'n Br., Ex. 1.)

Also, both parties insist that *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854 (1993) is on their side. ERI says that under *Bay Cities* "Related Claims" provisions are to be broadly interpreted (Mot. to Dismiss at 18), while RQC says that under *Bay Cities* such provisions can't "encompass every conceivable logical relationship" such that they cut against the reasonable expectations of the insured. (Opp'n Br. at 16–18 (citing *Bay Cities*, 5 Cal. 4th at 873).)

The parties both lose sight of a critical fact here, however. Now before the Court is a *motion to dismiss*, which presents the narrow, threshold question whether RQC has stated sufficient facts that, if true, entitle it to relief. The *Bay Cities* opinions don't make it clear, but the Court retrieved the docket from the case, and it went all the way to trial. That is where the relatedness of the claims at issue was resolved. Likewise, none of the three cases ERI cites on the relatedness of claims was resolved at the motion to dismiss phase. There was a nonjury trial on the plaintiff's breach of contract claim in *Westrec Marina Mgmt., Inc. v. Arrowood Indemnity Co.*, 163 Cal. App. 4th 1387, 1391 (Cal. Ct. App. 2008). And *Homestead Ins. Co. v. American Eagle Surplus Lines Ins. Co.*, 44 Cal. App. 4th 1297, 1300 (Cal. Ct. App. 1996), and *In re DBSI, Inc.*, 2011 WL 3022177 at *2 (Bkrtcy. D. Del. 2011), were both resolved on summary judgment. A case on which RQC relies, *Feldman v. Illinois Union Ins. Co.*, 198 Cal. App. 4th 1495, 1500), was an appeal from a summary judgment order. Indeed, "[s]ummary judgment is an appropriate vehicle to determine coverage under an insurance policy when it appears there is no material issue of fact to be tried and the sole issue before the court is one of law." *Pepper Indus., Inc. v. Home Ins. Co.*, 67 Cal. App. 3d 1012, 1017 (Cal. Ct. App. 1977).

/ /

### E. RQC Fails to Allege Bad Faith

RQC's fourth and final claim against ERI alleges a breach of the covenant of good faith and fair dealing. This claim requires it to show not only that ERI's withdrawal of its defense was improper, but that it was unreasonable. *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (Cal. Ct. App. 1986). In this context, unreasonable means "done in bad faith or without proper cause." *O'Keefe v. Allstate Indem. Co.*, 2013 WL 3746227 at *3 (S.D. Cal. July 15, 2013) (citing *Love*, 221 Cal. App. 3d at 1151). Obviously, if there is a genuine, good faith dispute between the parties as to coverage, then the insurer's denial of that coverage isn't unreasonable. "It is now settled law in California that an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (Cal. Ct. App. 2001)

RQC's complaint comes up short on this claim. It alleges simply that ERI breached the covenant "by refusing to accept coverage of the Action or indemnify Plaintiffs," which speaks only to the denial of coverage and not whether it was actually reasonable. (Compl. ¶ 45.) RQC does go on to allege that ERI "acted fraudulently, maliciously, oppressively and in conscious disregard of Plaintiffs' rights" and that "despite clear coverage" ERI "wrongfully withdrew coverage," but that allegation seems more tied to a demand for exemplary and punitive damages. (Compl. ¶ 47.)

It's clear enough to the Court what RQC probably *wants* to allege. When ERI withdrew its defense against SFIP's claims, it did so on the ground that the claims asserted in the first and second amended complaint were related to the original unlawful detainer action, which was filed before RQC's policy took effect. ERI said:

> The first amended complaint is premised upon the same lease agreement that was the basis of the originally filed unlawful detainer action. In its amended complaint, SFIP asserts causes of action for breach of contract, waste, conversion, fraudulent transfer, constructive fraudulent transfer, fraud, and negligent misrepresentation. Each of these causes of action are related

> to the defendants' alleged failure to comply with the terms of the lease agreement, misrepresentations made in connection with that lease agreement and other alleged wrongful acts in violation of the lease agreement. (Mot. to Dismiss, Ex. G.)

RQC's position, essentially, is that *that* explanation is unreasonable. As RQC sees the case, there is simply no sensible way to construe "Related Claims" such that the claims SFIP asserted in its first amended complaint were related to the claims for unpaid rent in its unlawful detainer action. Also, it begs the question why ERI ever defended RQC at all, given that when RQC originally tendered SFIP's first amended complaint it also tendered SFIP's original unlawful detainer action. In other words, ERI's argument for withdrawing its defense was available to it from the beginning and could have been asserted well before it was.

The Court is somewhat sympathetic to ERI's argument that, at a minimum, it had a good faith basis for its coverage position, even if that position turns out to be wrong. The Court has the same recurring problem, though, in blessing that argument now, namely that it is inappropriate at the motion to dismiss phase. Of the many cases cited by ERI, only one involved a motion to dismiss—and the breach of the covenant of good faith claim failed because the plaintiff was wrong on a point of law. *See Rappaport-Scott v. Interinsurance Exchange of Auto. Club*, 146 Cal. App. 4th 831, 837–38 (Cal. Ct. App. 2007). Every other case, except for one that went to trial, invoked the good faith defense at the motion for summary judgment phase. *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713 (2007); *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062 (Cal. Ct. App. 2007); *Chateau Chamberay*, 90 Cal. App. 4th 335 (Cal. Ct. App. 2001); *Farley v. Allstate Ins. Co.*, 81 Cal. App. 4th 1282 (Cal. Ct. App. 2000); and *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217 (9th Cir. 1998). When the question is whether one party's interpretation of an insurance policy's language is reasonable, as it is here, it seems the best course is for the evidentiary record to be absolutely complete before the Court should consider dismissing a claim for the breach of covenant of good faith and fair dealing on the ground that an insurer's denial was reasonable. That is a question for the factfinder.

//

## V. Conclusion

ERI's motion to dismiss is **DENIED**. Its alternative motion for a more definite statement is **GRANTED**. Neither the Court nor ERI should have to rely on a jigsaw puzzle of documents—even if judicially noticeable ones—to fully understand the substance and basis of RQC's claims. RQC should file a first amended complaint, and that first amended complaint should lay out a richer factual history of this case as the Court has tried to do above. It should be very precise as to the role of Travelers in this case, and specifically on the question why the defense that Travelers provided wasn't full and complete such that it suffered injuries for which ERI is responsible. Likewise, RQC must do a better job of alleging that ERI's withdrawal of coverage was unreasonable such that it is properly stating a claim for the breach of the covenant of good faith and fear dealings. The factual bases for the standing of George Rogers, and for punitive damages, also need to be made more clear.

For what it is worth, the Court senses that this is, at best, a straightforward breach of contract case, and its ruling above shouldn't be taken as any kind of ruling on ERI's two chief defenses. The first is that the defense and coverage provided by Travelers are fatal to RQC's claims, and the second is that the claims in SFIP's amended complaints are sufficiently related to the underlying unlawful that they fall outside of the coverage period. After RQC files a first amended complaint, and the evidentiary record in this case is more or less complete after any discovery is taken, ERI is free to raise those arguments again on a summary judgment motion.[9] The Court simply finds that, at this early stage, when the analysis is focused on the adequacy of RQC's pleadings, that it can state a claim for breach

---

[9] The Court is perplexed in particular by RQC's position, on the one hand, that Travelers' policy simply didn't cover all of the claims asserted by SFIP, and its position, on the other hand, that Travelers reserved its rights with respect to all of those claims. If the policy plainly didn't cover all of the claims, that supports RQC's argument that the defense it received from Travelers wasn't a full one. But if RQC tendered the entire lawsuit to Travelers and it reserved its rights with respect to all of the claims, that presumably means it defended all of them. This is because "[u]nder California law, an insurer has a duty to defend its insured against all claims alleged against its insured, provided that there is a potential for coverage with respect to at least one of the claims." *S.J. Amoroso Const. Co., Inc. v. Executive Risk Indem., Inc.*, 2009 WL 4907736 at *11 (N.D. Cal. Dec. 14, 2009). In any event, whatever the actual allegation is, it needs to be crystallized in RQC's first amended complaint.

of contract and breach of the covenant of good faith and fair dealing. *See Iqbal*, 556 U.S. at 678. RQC's first amended complaint shall be filed within 2 weeks of the date this Order is entered.

**IT IS SO ORDERED**.

DATED: February 17, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge